A. F. WOODARD, Appellee, v. SECURITY INSURANCE COMPANY OF
NEW HAVEN, Appellant.

**APPEAL AND ERROR:** Assignment of Errors—Belated Assignment—
1 **Effect.** A judgment appealed from will not be affirmed on appeal
because of the total absence in the appellant's argument of any
assignment of error when the contentions of the parties are mani-
fest, and so treated by the parties, and when a formal assignment
of error is made in the reply, and no additional argument is re-
quested. (See Book of Anno., Vol. 1, Sec. 12869, Anno. 14 *et seq.*)

**EVIDENCE:** Laws of Foreign State—General Presumption Excluded.
2 No presumption will be indulged that the statutory law of another
state is the same as the statutory law of this state when the plead-
ings of the parties are inconsistent with such presumption. So
held as to statutes relative to proofs of loss under an insurance
policy. (See Book of Anno., Vol. 1, Sec. 11312, Anno. 10 *et seq.*)

**INSURANCE:** Notice and Proof of Loss—Delay—Effect. Even though
3 it be conceded that particular facts and circumstances may excuse
delay on the part of an insured policyholder in making proofs of
loss, yet such facts and circumstances cannot excuse the total fail-
ure to make any such proofs.

**INSURANCE:** Notice and Proof of Loss—Nonexcuse for Failure to
4 **Give.** The requirement of a *statutory* form of fire insurance policy
that proof of loss shall be given in a specified time and manner is
not abrogated by a statute which declares that the policy shall be
deemed a *valued* policy,—that is, a policy on which, in case of loss,
the entire amount of the policy is collectible.

**INSURANCE:** Notice and Proof of Loss—Insufficient Proof. The let-
5 ter of an insured to an insurer may not be deemed to constitute
proof of loss when there is no evidence that insured so intended
the letter, and, on the contrary, inquired therein as to what proof
he should make.

**INSURANCE:** Notice and Proof of Loss—Insufficient Waiver. The
6 letter of an insured to an insurer, making inquiry as to what proof
of loss he should make, and the letter of the insurer in reply, in
which the insured is referred to the requirements of the policy,
will not constitute a waiver of proof of loss, the insured not claim-
ing that he was misled by the correspondence or that he in any
manner changed his position by reason thereof.

**INSURANCE:** Actions on Policies—Answer—Construction. Answer re-
7   viewed, and held to plead sufficiently the total failure of an insured
   to furnish proofs of loss.

Headnote 1:   3 C. J. p. 1414.   Headnote 2:   22 C. J. p. 154.   Headnote
3:   33 C. J. p. 15.   Headnote 4:   26 C. J. pp. 368 (Anno.), 378.   Head-
note 5:   33 C. J. p. 18 (Anno.)   Headnote 6:   33 C. J. p. 25.   Headnote
7:   33 C. J. p. 90.

*Appeal from Page District Court.*—EARL PETERS, Judge.

FEBRUARY 16, 1926.

ACTION at law on a fire insurance policy.   Plaintiff recov-
ered, and defendant appeals.—*Reversed.*

*Stipe, Davidson & Davidson* and *Stout, Rose, Wells & Mar-
tin,* for appellant.

*Ferguson, Barnes & Ferguson,* for appellee.

MORLING, J.—The only controversy in this case is over fail-
ure to give proofs of loss.   It is apparently assumed by both
parties that the policy is a Nebraska contract, and it purports
to be a uniform standard Nebraska farm policy, approved by
the Nebraska state insurance board.   The insured property con-
sisted of a barn and other buildings in Nebraska.   The policy
was issued in 1916 to McDonnell.   Approvals dated May 15,
1918, of assignment by McDonnell to Zahner, and December 19,
1918, of assignment by Zahner to plaintiff, were secured
through the local agent, Riley, at Fairbury, Nebraska.   It does
not appear where McDonnell or Zahner resided, or whether or
not plaintiff was acquainted with them.   Plaintiff apparently
lives at Shenandoah, Iowa.   The barn was totally destroyed in
August, 1919.   Plaintiff had never received the policy.   After
the fire, he inquired at the bank at which his deal for the prop-
erty was closed, and was informed that the policy had termi-
nated, and that he had no insurance.   He believed that the policy
was left at the bank.   He says that, when he made the inquiries,
he did not think that the policy had been terminated, but that,
for a while after the inquiries, he thought he had no insurance.
He says that, when he purchased the property of Zahner, it was

agreed that Zahner should assign the insurance, but that he never asked Zahner for the policy. Plaintiff made no inquiry of Zahner. In the fall of 1921, plaintiff met McDonnell in Nebraska. McDonnell then gave plaintiff the name of defendant's local agent, Riley, to whom plaintiff wrote, as soon as he got home. On November 12, 1921, Riley mailed the policy to plaintiff. Riley testifies that he received the policy from McDonnell, and, after it was assigned to plaintiff, returned it to McDonnell, not knowing either Zahner or plaintiff. In his letter sending the policy to plaintiff, Riley stated:　　·

"I have sent your letter demanding payment to the insurance company in this same mail. I trust this will be taken care of in some way that will be satisfactory to you."

On November 19, 1921, plaintiff wrote to defendant's general agents at Rockford, Illinois, that he was the owner of the policy, stating its number and to whom issued, and referring to the assignments. In this letter he stated that, on or about August, 1919, the barn was completely burned, and that:

"I was sure that I had insurance on this barn, but I made every effort to find the policy, and was informed by Mr. Parker of the Citizens Bank at Woodlake, Nebraska, who at one time had to do with the ownership of the property, that the policy had expired and that there was no insurance covering the barn. As a matter of fact, it develops that the policy was in the hands of your agent, R. E. Riley, of Fairbury, Nebraska, and had never been returned after procuring the approval of the company to the assignment in my favor. I went ahead and built a new barn at a cost of $1,500, and I only learned a short while ago that the policy was in force and where it could be found, and the same has just been delivered to me by your agent, R. E. Riley, of Fairbury, Nebraska. I am sure that it will not be necessary to take any legal action to make collection under this policy, and I beg to inquire what steps I shall take to prove up the claim and make recovery. Mr. Riley tells me that he has also written you concerning settlement for this loss."

Under date of December 5, 1921, the defendant wrote plaintiff:

"We are today in receipt of copy of your letter of recent date directed to the Western Department Office of the Company

at Rockford, Illinois, with reference to a purported claim under policy No. 76603, and in replying thereto, we beg to refer you to the printed condition on both the front and back of your policy with reference to a claim, if you have one, against the company.''

The record does not show that anything more was done until the petition was filed in this suit, May 26, 1922. The plaintiff pleads the statutes of Nebraska as exempting him from the necessity of furnishing proofs of loss, and also pleads excuse and waiver based on the facts which have been related. Defendant pleads the provisions of the policy requiring notice and proofs of loss, and failure to comply with them. The policy and indorsements are printed on the four pages of a double sheet of large legal or foolscap size of paper. The front and back of the policy do not refer to proofs of loss. On the second page (the back of the first sheet) are numerous conditions, among them one requiring that, in case of. loss, assured shall, within 15 days, give the company, at its office in Rockford, Illinois, written notice thereof, and shall, within 60 days from the date of the loss, render to such office a particular account of the loss, signed and sworn to by the assured, and by the assured only (except in case of death, and then by the legal representatives), stating the date and circumstances of the same, exact nature of the title, by whom and for what purpose the building was occupied, and all incumbrances. It also requires the furnishing of an itemized statement, estimate of the buildings by a builder, and certificate of two neighbors and of nearest magistrate, and provides:

''All claims for any loss or damage shall be forfeited by failure to furnish proofs of such loss or damage within the time and in the manner above provided.''

There were also provisions for exhibiting the remains, submitting to examination, appraisement, etc.

I. The appellant's argument contains no statement of error, and appellee asks for an affirmance upon that ground. The only exception is to the judgment. Appellant sets out its

propositions of law and argues them. They are

**1. APPEAL AND ERROR: assignment of errors: belated assignment: effect.** argued by the appellee. In the argument in reply, appellant states that it relies upon the error that the judgment is contrary to law and not sustained by sufficient evidence. Our rules are designed to secure an orderly and fair presentation of the case, and in such form that opposing counsel and the court may know readily and precisely the questions presented. The rules must be observed. No further argument after the amendment by the reply has been asked for. The court is able to readily ascertain the contentions of both parties. We think we ought not to affirm for the delay in counsel's making the one formal assignment of error.

II. It is urged that we should assume the law in Nebraska to be the same as provided by Sections 1742 and 1744 of the Code of 1897 (Sections 8978 and 8986, Code of 1924), and that

**2. EVIDENCE: laws of foreign state: general presumption excluded.** the letters mentioned waived compliance with the provisions of those sections. The sections, in substance, are that, in an action on the policy, it shall only be necessary for the assured to prove the loss, and that he has given written notice, accompanied by the prescribed affidavit, within 60 days. Without deciding whether, in a particular case, we might presume another state to have the same statute, we have to say that in this case each party has pleaded at considerable length the statutes of Nebraska. Neither has pleaded a statute such as ours as being in force in that state. The presumption exists only in the absence of pleading and proof to the contrary. It is pleaded by defendant, and admitted, that by one of the Nebraska statutes no fire insurance company may issue a policy other than on a form prescribed by the insurance board, as nearly as practicable in the New York standard form. The policy, as has been noted, purports to be a standard form, and approved by the state insurance board. We think that, if there were in Nebraska statutes similar to those of Iowa, relating to proofs of loss, they would have been pleaded. In any event, on these pleadings, and in view of the uniform policy statute of Nebraska, we cannot presume that another statute of that state, not pleaded, as vital

to the case as that in question, and contrary in part to the approved standard policy form, exists.

III.   Plaintiff contends that his ignorance of the existence and whereabouts of the policy, under the circumstances shown, excused him from complying with its conditions relating to proofs of loss.  It is generally held that delay beyond the prescribed time in giving notice and proofs is excusable if, under all the circumstances, the insured acts with reasonable diligence, and his failure to comply with the requirements of the policy is not due to his fault or neglect.  *Munz v. Standard L. & Acc. Ins. Co.*, 26 Utah 69 (72 Pac. 182) ; *Solomon v. Continental Fire Ins. Co.*, 160 N. Y. 595 (55 N. E. 279) ; *Woodmen Acc. Assn. v. Pratt*, 62 Neb. 673 (87 N. W. 546, 89 Am. St. 777) ; *Concordia Fire Ins. Co. v. Waterford*, 145 Ark. 420 (224 S. W. 953) ; *Chapin v. Ocean Acc. & Guar. Corp.*, 96 Neb. 213 (147 N. W. 465) ; *Simmons v. Western Trav. Acc. Assn.*, 79 Neb. 20 (112 N. W. 365) ; *Bard v. Fireman's Ins. Co.*, 108 Me. 506 (81 Atl. 870) ; 14 Ruling Case Law 1333.  Plaintiff's evidence is not altogether satisfactory, to show absence of negligence.  No reason is given for not obtaining the policy when he bought the land, or for not inquiring earlier of McDonnell, or for not inquiring at all of Zahner.  But, upon the assumption that the question of diligence would, on the record, be for the jury, or for the court, as the trier of fact, the excuse would only go to the delay.  It would not, of itself, excuse the entire omission to furnish proofs. It would not absolve the plaintiff altogether from the duty of complying with the requirements of the policy.  He should at least give the notice and proofs within a reasonable time after acquiring information of the existence of the policy and receiving it into his possession.  Idem.

IV.   Plaintiff relies upon a section of the Nebraska statute (Compiled Stat. 1922, Section 7809) declaring that:

"Whenever any policy of insurance shall be written to insure any real property in this state against loss by fire, tornado or lightning, and the property insured shall be wholly destroyed,

3. INSURANCE: notice and proof of loss: delay: effect.

without criminal fault on the part of the in-
sured or his assignee, the amount of the insur-
ance written in such policy shall be taken con-
clusively to be the true value of the property
insured and the true amount of loss and measure of damages.''

4. INSURANCE:
notice and proof
of loss: nonex-
cuse for failure
to give.

No decision of the Nebraska courts construing this act as
absolving the insured from the policy requirements of furnish-
ing notice and proofs of loss has been proved or cited. The
defendant pleads, and plaintiff admits, with certain immaterial
exceptions, the existence of another section of the Nebraska
statute (Compiled Stat. 1922, Section 7836):

"No fire insurance company shall issue any fire insurance
policy covering any property or interest therein in this state
other than on a form prescribed by the department of trade and
commerce as nearly as practicable in the form known as the
New York standard.''

The decisions of the Nebraska courts, except *Security St.
Bank v. Aetna Ins. Co.*, 106 Neb. 126 (183 N. W. 92), have not
been introduced in evidence. We therefore do not treat them
as a part of the record. Both parties refer in argument to
Nebraska decisions. The defendant refers to the following cases,
among others: *State ex rel. Martin v. Howard,* 96 Neb. 278
(147 N. W. 689); *Fadanelli v. National Sec. Fire Ins. Co.*
(Neb.), 205 N. W. 642. The opinion in the former case passes
upon the Uniform Policy Act, and was decided in 1914. It refers
to the statute as having been passed in 1913. A valued policy
act, substantially the same as that pleaded, was construed in
*Home Fire Ins. Co. v. Weed,* 55 Neb. 146 (75 N. W. 539), de-
cided in 1898. In *Aetna Ins. Co. v. Simmons,* 49 Neb. 811 (69
N. W. 125), decided in 1896, a policy requirement for furnish-
ing proofs of loss was assumed to be valid, but was held to have
been waived. In *Northern Assur. Co. v. Hanna,* 60 Neb. 29
(82 N. W. 97), it was held that the time prescribed for furnish-
ing proofs was not of the essence, and also that there was a
waiver by denial of liability. In *Farrell v. Farmers & Merch.
Ins. Co.,* 84 Neb. 72 (120 N. W. 929), it was held that, where
the adjuster made an investigation, and informed the agent of
the assured that the loss was total, and that the company would
be compelled to pay, and that, if insured were present, they

would have no trouble in settling, there was a waiver. In *Calnon v. Fidelity ·Phenix F. Ins. Co.* (Neb.), 205 N. W. 942, it was determined that the insured could not recover the value of grain stored for another, unless liable to him. In *Woodmen Acc. Assn. v. Pratt,* 62 Neb. 673 (87 N. W. 546), the court said:

"The defense [failure to give notice and proofs as required by an accident policy] is purely technical. The risk assumed by the insurer has not been increased or in any wise jeoparded by the failure of the insured to comply literally with the provisions for notice of the accident and the injury flowing therefrom. The insurer has received the stipulated consideration for the indemnity contracted for, and which the insured should not be deprived of after he receives an injury, save for his violation of the letter and spirit of the contract in respect of subsequent conditions to be performed, as contemplated and intended by the parties thereto, under well recognized and established rules of construction of contracts of the kind under consideration. A company of this character, organized for the purpose of providing indemnity to those suffering injury and loss from accident, should, and, we assume, does, have a higher mission than merely the collection of revenues. If the provision quoted must, under all circumstances, and regardless of conditions, be absolutely and strictly complied with according to the letter thereof, then the contract can only be regarded as a snare and pitfall, sure to entrap the unwary and deprive them of the protection and indemnity contracted for on their part in the best of faith and honesty of purpose."

In *Continental Ins. Co. v. Chase* (Tex. Civ. App.), 33 S. W. 602, there was construed a statute providing:

"A fire insurance policy in case of total loss by fire of property insured shall be held and considered to be a liquidated demand against the company for the full amount of such policy."

This statute was there held to be intended to simplify the mode of procedure against insurance companies in collecting fire losses, and to protect the people against delays in collection "caused by the cunning manner in which they are drawn, and the scores of subtle stipulations, conditions, provisos, and exceptions contained in them, that no business man has time to or

ever does read, or could understand if he did read.'' It was held that a liquidated demand was an amount ascertained, settled, and fixed, and so could not be open for adjustment, proof, or anything else but payment; that all the holder had to do was to present his policy for payment, as he would present a promissory note, and it was due when the loss occurred, regardless of stipulations in the contract. We are cited to no similar holding on merely a valued policy. The policy in suit is a valued policy. No proof of the value of the insured property after total destruction is necessary. We think that, if it had been the intention of the Nebraska legislature to abolish notice and proofs of loss, and to prohibit conditions requiring them, such intention would have been plainly stated. The requirement that the policy shall be as nearly as practicable in the New York standard form can, as it seems to us, be reconciled with no other conclusion than that proofs might be required in accordance with that form. As plaintiff's letter to defendant did not purport to be a proof of loss, and there was no evidence that it was intended or understood by defendant to be intended as such, the failure to definitely point out omissions and defects cannot be construed into a waiver, in view, at least, of the reference to the policy. Without further elaboration, we are of the opinion that the valued policy law of Nebraska did not absolve the plaintiff from the duty of furnishing proofs of loss, if required by the policy.

V. Plaintiff pleads, and contends in argument, that his letter of November 19, 1921, was intended and believed to be sufficient proof of loss; that it shows on its face that it was so intended; and that defendant so knew and understood from reading it. This is denied by the defendant, and there is no evidence that plaintiff did intend or believe the letter to be sufficient proof. On the contrary, after stating that he was sure it would not be necessary to take legal action, the plaintiff inquired what steps he should take to prove up the claim and make recovery. He could hardly believe, at least when there is no evidence that he did believe, the letter to be proof, when he was asking, in effect, what proof he should make.

5. INSURANCE: notice and proof of loss: insufficient proof.

As a part of this contention it is also claimed that defend-

ant's reply, taken in connection with the letter, was a waiver of proofs. The defendant's reply referred the plaintiff to the con-

6. INSURANCE: notice and proof of loss: insufficient waiver.

ditions of the policy. It misstated their location in the policy, but it did refer to the printed condition with reference to a claim, "if you have one." Plaintiff testifies:

"If they had made any objection to the letter, Exhibit 3, I would have sent further proof. I would have done whatever they required of me."

He does not testify that he was misled or deceived by the terms of the letter. He does not say that he understood from the letter, in connection with the conditions of the policy, that it was impossible for him to comply with them, on account of the expiration of the time for doing so, or for other reasons. He does not claim that he understood the letter to be a denial of liability on account of the expiration of time or for any other reason. This letter was not sworn to; was not in the form of an affidavit. It showed a total loss of the barn, and set up an excuse for the delay. In short, it did not purport to be a proof of loss, nor did the defendant's letter purport to accept it as such; did not promise an investigation. It is not shown that defendant made any investigation, or had any other knowledge of the facts. The defendant's letter, for anything that appears to the contrary in this record, was an invitation to make proofs, rather than an acceptance of the letter as proofs, or an excusing of plaintiff from making further proofs. Plaintiff made no proofs, went to no trouble, and incurred no expense, in reliance on the letter.

The policy expressly provides that all claims for loss shall be forfeited by failure to furnish proofs within the time and in the manner above provided. We are not disposed to recede from our former decisions referred to by plaintiff. *Teasdale v. City of New York Ins. Co.*, 163 Iowa 596, and other cases. Nevertheless, in our opinion there is not sufficient evidence of either compliance or waiver to support the judgment. *Ervay v. Fire Assn. of Philadelphia*, 119 Iowa 304; *State Ins. Co. v. Lock*, 191 Iowa 1083; *Hessen v. Iowa Auto. Mut. Ins. Co.*, 195 Iowa 141. To sustain plaintiff's contention would encourage

the making of fraudulent claims when there is no longer oppor-
tunity for investigation.

VI. Plaintiff makes the further contention that the answer
is insufficient to plead the defense of the total failure to fur-
nish proofs of loss; that the defense is merely that the proofs
were not furnished within the prescribed time.
Both sides have been quite liberal in pleading
evidence and legal conclusions, and the answer

7. INSURANCE: ac-
tions on poli-
cies: answer:
construction.

does stress the time limit of the condition, and incorporates the
time limit in most of its references to the condition. One allega-
tion is that defendant, by the letter, referred plaintiff to the
terms of the policy, and called his attention to the fact that he
had failed to perform them; and that, by reading the policy,
plaintiff would have been fully informed of all the rights and
claims of the defendant; "and that plaintiff had in fact failed
to perform said policy by giving defendant notice and furnish-
ing proof of loss within the time therein required." In another
division it is alleged that:

"Plaintiff wholly failed to give this defendant notice of
said alleged loss within the time provided in said policy, and
failed to render to defendant, within the time provided and
agreed in said policy, a particular account of such loss * * * and
has failed to furnish the defendant an itemized statement * * *
and the plans and specifications and an itemized estimate * * *
and failed to furnish the certificate of two disinterested neigh-
bors and of the nearest magistrate * * * The defendant had no
notice or knowledge of the fact that any loss had occurred on
said premises, or that the plaintiff claimed that any such loss
had occurred, for more than two years after the date of the
alleged loss, as set out in the petition, and had no opportunity to
make investigation and inform itself as to whether or not any
loss had occurred, and if so, as to the nature or extent thereof,
or as to the origin or cause of said fire, or as to whether the said
loss was total or partial."

We think that plaintiff's argued construction of the answer
is too narrow and technical. The allegations of the pleadings
show that no proofs were made, and that the company was de-
fending on that ground, among others.

VII. The letter of the local agent as a waiver is not

seriously argued. There is no evidence of authority, and nothing in the letter, in our opinion, that can be construed to be a waiver.

﹒   The judgment must be—*Reversed.*

DE GRAFF, C. J., and EVANS and ALBERT, JJ., concur.