VIVIAN I. MAYFIELD ET AL., APPELLEES, V. NORTH RIVER INSURANCE COMPANY, APPELLANT.

FILED NOVEMBER 24, 1931. No. 27899.

*Montgomery, Hall, Young & Johnsen,* for appellant.

*F. A. Hebenstreit* and *J. C. Mullen, contra.*

Heard before GOSS, C. J., DEAN, EBERLY and PAINE, JJ., and BLACKLEDGE, District Judge.

EBERLY, J.

This is an action at law on a policy of fire insurance. It was concededly issued by the appellant, hereinafter designated as defendant, to the appellees, hereinafter referred to as the plaintiffs, doing business as a partnership under the name and style of Richardson County Hatchery. Its terms insured the copartners "against all direct loss or damage by fire, * * * to an amount not exceeding Fifteen Hundred ($1,500) Dollars (for a definite period), to the

following described property while located and contained as described herein, and not elsewhere, to wit: $1,500 on stock of merchandise * * * all only while contained in the one-story, metal roof, ironclad building, occupied as a Hatchery and Poultry Supply Store, situated on lots 23 and 24, block 90, of Falls City, State of Nebraska."

It was alleged in plaintiffs' petition that on or about the 1st day of July, 1929, the plaintiffs removed the stock insured from the location as above described to a building located on lot 12, block 221, Falls City, "with the full knowledge, oral authority and consent of the defendant company by and through its agent, C. A. Johnson, and at which place" the property covered was thereafter totally destroyed by fire.

The defendant company's answer contained, first, a general denial; second, admitted the execution of the policy of insurance in suit; quoted the language of the description hereinbefore set forth; denied the authority of its agent to waive any provision of the policy except in writing; and further alleged that the fire involved in this action was "not at the location covered by the policy, and defendant is not liable for any loss which may have resulted therefrom."

To this the plaintiffs filed a reply which, in addition to a denial of the new matter contained in the answer, set forth additional facts which they allege amounted to an estoppel.

By agreement a jury was waived and the case was tried to the court, which resulted in findings and judgment for the plaintiffs as prayed. From an order overruling defendant's motion for a new trial this appeal is prosecuted.

Defendant in this court challenges the sufficiency of the evidence, and alleges that the district court erred "in failing to hold, as a matter of law, that the policy provision (heretofore quoted) constituted a coverage condition or risk limitation, which, in the absence of an express consent equivalent to the making of a new contract, covered the property only at the location described in the policy."

From the foregoing it is evident that the determining words in this controversy are, "the following described property while located and contained as described herein, and not elsewhere, to wit:" and, "all only while contained in." Considered without reference to context, these provisions constitute an essential part of, and are identified with, the New York standard fire insurance policy form. Of this policy form this court has said: It is "a definite and well-known form of contract. Its characteristics, terms and conditions are known and recognized by the legislature of New York and other states, and are familiar to all carrying on the business of fire insurance." *State v. Howard,* 96 Neb. 278, 287.

It may be said in addition that this standard form, first enacted substantially by the legislature of New York in 1886, has, with passing time, received a definite and settled judicial construction by the courts of New York. This is especially true as to the controlling words hereinbefore quoted. Thus in 1894 we find the following language employed in *Bahr v. National Fire Ins. Co.,* 80 Hun (N. Y.) 309: "The action was to recover $200, the insurance on a carriage * * * 'while located and contained as described herein, and not elsewhere, to wit: * * * while contained in the frame building (here follows the precise description).' The carriage was burned in a livery stable and horse shoeing shop, * * * a block and a half away from the place named in the policy. This judgment cannot stand. The location of the insured property was a warranty, a breach of which avoided the policy. *Bryce v. Lorillard Fire Ins. Co.,* 55 N. Y. 240." This construction has continued unchanged to the present time. In *American Surety Co. v. Patriotic Assurance Co.,* 242 N. Y. 54, 63 (January, 1926), we find the New York court of appeals adhering to the view thus expressed, and employing the following language: "The provisions of the New York standard fire insurance policy of which we may take judicial notice provide that the insurer insures against damage by fire to the property described in the policy 'while located and con-

tained as described herein * * * but not elsewhere.' The description is a warranty, the truth of which is a condition precedent to any liability on the part of the insurer. *Bryce v. Lorillard Fire Ins. Co.,* 55 N. Y. 240; *Bahr v. National Fire Ins. Co.,* 80 Hun, 309; *London Assurance Corporation v. Thompson,* 170 N. Y. 94."

Thus, it must be conceded that under the terms of the New York standard fire insurance policy form, as construed by the courts of that state, unmodified by legislation, the controlling words of this policy in suit must be deemed a warranty, the truth of which at the time of this loss is a condition precedent to recovery thereon.

It would appear, however, that the legal effect of the language quoted, assuming its character as a warranty in the technical sense of that term to be unquestioned, has been in legal effect modified by Nebraska legislation. In 1913 the legislature of that year adopted an insurance code which appears as chapter 154, Laws 1913. It was approved April 18, 1913. It was passed for the purpose of providing "for the organization and government of insurance companies and to regulate, supervise and control the business of insurance in Nebraska," etc. The provisions of this enactment with amendments thereto are now carried as chapter 44, Comp. St. 1929. This legislation provided in part: "No fire insurance company shall issue any fire insurance policy covering any property or interest therein in this state other than on a form prescribed by the department of trade and commerce as nearly as practicable in the form known as the New York standard as now or may be hereafter constituted, except as follows." Comp. St. 1929, sec. 44-601. The proper construction of this insurance code was determined by this tribunal in the case of *State v. Howard,* 96 Neb. 278. In that opinion it was expressly determined that "that portion of the section referred to which provides that the New York form shall be used as it 'may be hereafter constituted' is invalid;" but "that it was the intention of the legislature that the New York form should be adopted as the basis of the in-

surance contract, and that the words 'as nearly as practicable' should be construed to mean 'as nearly as practicable' considering all other provisions contained in the insurance code which are inconsistent with or modify the provisions of the New York standard form."

In this connection it is also to be noted that on this subject, and with special reference to section 44-601, Comp. St. 1929, this insurance code expressly provides: "A policy issued in violation of this article shall be held valid, but shall be construed as provided herein, and when any provision in such a policy is in conflict with any provision hereof, the rights, duties and obligations of the company, policy holder and the beneficiary shall be governed by the provisions of this article." Comp. St. 1929, sec. 44-608. It was also determined in the case last cited that, in the preparation of a form as required by such section 44-601, the duties enjoined thereby on the department of trade and commerce were "ministerial or administrative, and not legislative, and the section imposing the duty is not an unconstitutional delegation of legislative power."

The New York standard form of fire insurance at the time of the adoption of the Nebraska insurance code existed solely by virtue of a New York statute. The adoption of the New York form as the basis of the Nebraska insurance contract was in effect the adoption of the New York enactment. This situation renders proper and requires the application of the rule of construction that, where the legislature adopts the statute of another state, judicial construction which it has already received in such state is also adopted. *Coffield v. State,* 44 Neb. 417; *White v. State,* 28 Neb. 341; *Forrester v. Kearney Nat. Bank,* 49 Neb. 655; *Goble v. Simeral,* 67 Neb. 276; *Gentry v. Bearss,* 82 Neb. 787; *State v. Martin,* 87 Neb. 529. The authorities above enumerated support the view that this court is committed to the doctrine that the rule of construction applied in the cases referred to is proper to be applied in the interpretation of the controlling provision of the policy in suit, which we have already quoted, excepting only where such pro-

visions in the policy are necessarily repugnant to the insurance code provision enacted for the purpose of modifying the provisions of the New York standard insurance form. It necessarily follows that the language of the policy in suit, including the words which are quoted at the commencement of this opinion and on which the defendant bases his defense, must be construed as a technical warranty and given the same effect as accorded by the courts of New York, except in so far as such construction may not be in harmony with other provisions of our insurance code "which are inconsistent with or modify the provisions of the New York standard form." *State v. Howard,* 96 Neb. 278. In this connection section 44-322, Comp. St. 1929, becomes important. It reads as follows: "No oral or written misrepresentation or warranty made in the negotiation for a contract or policy of insurance by the insured, or in his behalf, shall be deemed material or defeat or avoid the policy or prevent its attaching unless such misrepresentation or warranty deceived the company to its injury. The breach of a warranty or condition in any contract or policy of insurance shall not avoid the policy nor avail the insurer to avoid liability unless such breach shall exist at the time of the loss and contribute to the loss, anything in the policy or contract of insurance to the contrary notwithstanding." In the interpretation of the statutory provision just quoted this court in *Security State Bank v. Aetna Ins. Co.,* 106 Neb. 126, by Rose, J., said: "These provisions are by construction a part of the policy. * * * The legislation must be considered as a whole. To the enactment in the first sentence on the subjects of misrepresentation and warranty in preliminary negotiations, the second sentence adds a provision on the existence of breach of condition in the policy itself. The statute declares that the breach of a condition in the policy shall not avoid it, 'nor avail the insurer to avoid liability unless such breach shall exist at the time of the loss and contribute to the loss.' "

In *Westchester Fire Ins. Co. v. Norfolk Building & Loan*

*Ass'n,* 14 Fed. (2d) 524, the circuit court of appeals of the eighth circuit, in construing the statutory provision now under consideration, employed this language: "This provision of the Compiled Statutes of Nebraska constitutes a part of the insurance contract. *Home Fire Ins. Co. v. Weed,* 55 Neb. 146; *Calnon v. Fidelity-Phenix Fire Ins. Co.,* 114 Neb. 194; *McPhee v. Millers' Nat. Ins. Co.,* 198 Mich. 215. There is no evidence in the record tending to show that any purported change in title by reason of the foreclosure proceedings contributed in any way to the loss, and it has been held by the supreme court of Nebraska in construing the uniform Nebraska fire insurance policy that a breach of conditions in a fire insurance policy does not invalidate the insurance policy unless the breach of conditions contributed to the loss. *Security State Bank v. Aetna Ins. Co.,* 106 Neb. 126. This construction of a Nebraska statute by the highest court of the state is binding upon the federal court."

So by this rule of construction section 44-322, Comp. St. 1929, is to be regarded as, in legal effect, incorporated in and forming a part of the policy in suit. We therefore still regard the words of the policy in suit, upon which the defendant bases its defense, as in the nature of technical warranties as denominated by the courts of New York. Even so, they must be deemed modified as to force and effect by the statutory proviso providing that breach thereof "shall not avoid the policy * * * unless such breach shall exist at the time of the loss and contribute to the loss, anything in the policy or contract of insurance to the contrary notwithstanding." It is to be noted also that the existence of the breach of warranty at the time of the loss and its contribution to the loss must concur or coexist as a prerequisite to avoiding the policy. This conclusion the Nebraska cases fully sustain.

Indeed, while the facts which were involved did not present the precise question for determination here, nor was the language of the policy in suit identical with the policy now before us, still in view of section 44-608, Comp. St.

1929, the words of the fourth paragraph of the syllabus in *Hannah v. American Live Stock Ins. Co.*, 111 Neb. 660, express the exact principle controlling in the instant case, and, as a precedent, is binding on this court. In the case last referred to this court, in a unanimous opinion, construing what now appears in the Compiled Statutes of 1929 as section 44-322, announced the unanimous conclusion of the court that, "Under the statutes of Nebraska, the violation of a condition in a policy of insurance on live stock, by the removal of insured chattels from premises of owner, does not invalidate the insurance, unless such breach of contract shall exist at the time of the loss and contribute to the loss."

As to waiver and estoppel, on which plaintiffs in part rely, the evidence in the record, if believed, establishes that, after the removal of the insured stock from the place described in the policy to the place where it was subsequently destroyed by fire, the local recording agent of defendant was in and through the entire building in which this stock was then contained, saw and inspected the building, and had personal knowledge of the removal of the stock; that he was expressly informed by plaintiffs that the entire insured stock had been removed from the old location to the new one; and also that negotiations were had with him based on the fact that upon the arrival of certain newly purchased property additional insurance would be wanted by plaintiffs in the new location. It may fairly be said that, assuming the evidence in behalf of the plaintiffs to be true, this agent of the defendant, long prior to the fire, knew or should have known that the assured had not only removed their stock from the old to the new location, but were proceeding on the belief, engendered by transactions had with such agent, that the insurance had been likewise transferred and covered the stock in the new location. At this point we do not overlook the defendant's contention that no legal waiver or transfer of insurance under the terms of the policy were effectual until indorsed in writing upon the same. Nevertheless this court is committed to the doctrine that notice to a local agent of insurer who has

'authority to issue the policy is notice to the insurer. *Hunt v. State Ins. Co.,* 66 Neb. 125; *Echols v. Mutual Life Ins. Co.,* 106 Neb. 409; *Arendt v. North American Life Ins. Co.,* 107 Neb. 716; *Cooper v. German-American Ins. Co.,* 96 Minn. 81; *Cummings v. National Fire Ins. Co.,* 251 Mich. 105. The defendant, therefore, was chargeable with the knowledge possessed by its agent of the real situation with reference to the risk prior to the fire that destroyed the property in question. So, too, the business of insurance was and is "public in character, and requires that all those having to do with it shall at all times be actuated by good faith in everything pertaining thereto; shall abstain from deceptive or misleading practices, and shall keep, observe and practice the principles of law and equity in all matters pertaining to such business." Comp. St. 1929, sec. 44-101. But whether the facts established by the evidence are sufficient to show a legal waiver or binding estoppel we need not determine. It must be conceded that the record as an entirety fails to establish that the removal of the stock from the old to the new location, of which the insurer had imputed knowledge long prior to its destruction, in any manner contributed to the loss. This, in view of the express terms of the statute, is vital.

It follows that the judgment of the district court is correct, and it is

AFFIRMED.