HARRY WEINER, APPELLEE, V. AETNA INSURANCE COMPANY, APPELLANT: ROME MILLER, CROSS-PETITIONER, APPELLEE.

FILED MARCH 22, 1935. No. 29195.

*Crofoot, Fraser, Connolly & Stryker* and *James T. English,* for appellant.

*Shotwell, Monsky, Grodinsky & Vance, Daniel J. Gross* and *Leon & White,* for appellee Weiner.

*Hotz & Hotz,* for appellee Miller.

Heard before GOSS, C. J., ROSE, GOOD, EBERLY, DAY, PAINE and CARTER, JJ.

PAINE, J.

On July 13, 1934, an opinion was released in this case (127 Neb. 572), finding that the trial court erred in discharging the jury and entering a judgment for the plaintiff.

This court allowed an oral argument on the motion for rehearing on March 7, 1935. However, the opinion released July 13, 1934, was adhered to without change, and the case, so far as it involves the issues made upon the plaintiff's petition and the answer of the defendants thereto, is sent back to the lower court for retrial to a jury.

In the opinion above referred to, the issues made upon the cross-petition of the defendant, Rome Miller, and the

answers thereto, were not disposed of, and this supplementary opinion will dispose of those issues.

The record discloses that Rome Miller, one of the defendants and an appellee, owned the Millard Hotel, and sold the same to Harry Weiner for $120,000 on or about May 1, 1918, $20,000 being paid in cash, and a first mortgage, signed by Harry Weiner and others, was executed to Miller to secure the payment of 16 negotiable promissory notes, 12 of said notes being in the amount of $5,000, the first one being payable May 1, 1921, and one being payable each year thereafter in the sum of $5,000 for 11 years. Four additional notes of $10,000 each were executed, payable May 1, 1934, the total face of said 16 notes amounting to $100,000. In the mortgage it was further covenanted that the mortgagors would keep the property insured for Miller's benefit against loss by fire and tornado.

On April 2, 1928, the balance then due upon the mortgage was $65,000, and Miller sold the same to the Omaha Trust Company, with recourse, and by separate instrument guaranteed the payment of the same. On July 12, 1928, the Omaha Trust Company sold and assigned the mortgage without recourse to the Central Life Assurance Society of Des Moines, Iowa, but all of the insurance thereon continued to be payable to the Omaha Trust Company, which acted as trustee for all parties, collecting the principal and interest and remitting the same to the Central Life Assurance Society. On May 1, 1931, Weiner was unable to pay the $5,000 note falling due that day, and Rome Miller, as mortgagee, indorser and guarantor, paid the same to the Omaha National Company, the receipt given therefor, being exhibit 56, reading as follows:

"May 29, 1931. Note No. 11, due May 1, 1931, signed by Harry Weiner et al., attached hereto was paid by Rome Miller as indorser and proceeds remitted this day to Central Life Assurance Society. This note is to be held by us as agent for Rome Miller for collection from the makers but subject to the lien of Central Life Assurance Society for all unpaid balances or future advancements on

the mortgage given to secure the notes executed by Harry Weiner et al., of which this is one.

"The Omaha National Company,
"By (signed) J. P. Jones.
"J. P. Jones, Ass't Sec'y."

Weiner having also defaulted in the payment of the $5,000 note due May 1, 1932, and of the real estate taxes levied and assessed upon said property, the Central Life Assurance Society brought a foreclosure action, in which Rome Miller was also included. Decree was entered by consent on January 16, 1933, finding the amount due the Central Life Assurance Society of $51,918.98, with interest at 8 per cent. In the same decree Rome Miller was granted a lien for $5,149.98 by virtue of his payment of the $5,000 note upon which default had been made on May 1, 1931. The decree provided further that upon sale of the property the lien of the Central Life Assurance Society should be paid first, and Rome Miller's next.

Every person interested in the notes and mortgage was a party to this foreclosure suit, and the decree completely adjudicated their respective rights. An application for a nine months' stay was filed at the same time the decree was entered, to wit, on January 16, 1933. On February 8, 1933, the Millard Hotel property was entirely destroyed by fire, with fire insurance thereon as set out in the first opinion in this case (127 Neb. 572).

The Aetna Insurance Company insists that Rome Miller is not one of the named insureds within the mortgage clause, and has no rights whatever under the policy. It further insists that the evidence conclusively established that Rome Miller is not one of the mortgagees, nor a successor or assignee of the mortgagee, and that he simply has a lien on the premises by virtue of having paid one of the notes, and has no interest whatever in the insurance policies.

In the reply of the Aetna Insurance Company it is alleged that the Central Life Assurance Society on October 16, 1933, sold and assigned to C. W. Mead, trustee (for all

insurance companies save one), its decree of foreclosure against Harry Weiner, and also assigned its interest in all fire insurance policies except the policies written by the Globe & Rutgers Fire Insurance Company. But said insurance company insists it did not purchase the lien of the judgment of Rome Miller, junior thereto, Miller's judgment remaining in full force and effect, and that, instead of paying the mortgage held by the Central Life Assurance Society, it had simply purchased the decree of foreclosure which it had obtained in its favor.

Rome Miller, in his answer and cross-petition, set up that the mortgage clause provided that it should not be invalidated by any act or negligence on the part of Harry Weiner, mortgagor. In Harry Weiner's reply and answer to Rome Miller's cross-petition he asked that Miller's judgment on the $5,000 note be prorated over all of the insurance companies involved, and not against the Aetna Insurance Company alone.

It has been held in many cases that a mortgagee has such an insurable interest that he can recover a loss under a fire insurance policy. In case he sells and assigns such mortgage, he does not divest himself of that insurable interest if he has indorsed the notes secured by the mortgage and any part thereof remains unpaid. *Phenix Ins. Co. v. Omaha Loan & Trust Co.,* 41 Neb. 834; *German Ins. Co. v. Hyman,* 34 Neb. 704. It has been held that section 44-322, Comp. St. 1929, is a part of a fire insurance contract in Nebraska. Such matters as the assignment of a mortgage, or partial payments thereunder, do not constitute a defense in a suit on the policy by one who has an insurable interest thereunder. *Farmers & Merchants Ins. Co. v. Newman,* 58 Neb. 504. "When the mortgage debt is paid by an indorser of the mortgage note or by a surety, it does not necessarily discharge the mortgage; but the person making the payment may, if such was the intention and understanding at the time, hold the mortgage as security for his reimbursement by the person primarily liable." 41 C. J. 787.

We have a law relating to parties secondarily liable (Comp. St. 1929, sec. 62-803), which provides that, where an instrument is paid by a party secondarily liable, it is not discharged, but the party so paying it is remitted to his former rights as regards all prior parties.

In our opinion, when Rome Miller paid a part of said obligation, he had the right to hold the mortgage, together with the fire insurance, or such portion thereof as might be necessary for his reimbursement. *Hyde v. Hartford Fire Ins. Co.*, 70 Neb. 503. A surrender to the payer of a note unindorsed and uncanceled does not prove an absolute sale and transfer, but where equity demands, the payer is protected by the right of subrogation. *Allyn v. Dreher*, 124 Neb. 342.

In the judgment entered by the trial court on January 5, 1934, the court found generally that the defendant, Rome Miller, being the original mortgagee, and having indorsed the notes and taken up one of them, was entitled to the protection afforded by the "union" mortgage clause of the insurance policy as his interest might appear, and fixed the proportionate share that was due Rome Miller on his judgment lien at the sum of $97.62 on each of the $2,500 policies sued on in the case at bar, and that there was due to his attorney, William J. Hotz, the sum of $14.64, to be taxed as part of the judgment for costs against the Aetna Insurance Company. Such decree was entered on the correct theory that Rome Miller was subrogated to all of the rights of the Central Life Assurance Society in its mortgage, and all of the security back of it, including the insurance policies to the extent of the $5,000 note which he had taken up May 1, 1931. We find no prejudicial error in this part of the judgment, and the same is hereby affirmed in so far as it relates to the interests of Rome Miller.

AFFIRMED AS TO ROME MILLER.